IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**RUBY DUGAN,**

        Plaintiff,

   v.

**CAROLYN W. COLVIN, acting Commissioner of the Social Security Administration**,

        Defendant.

No. 6:13-cv-00826-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Plaintiff Ruby Dugan filed a complaint [1] seeking review of the Commissioner's decision to deny her application for disability insurance benefits and supplemental security income. She assigns numerous errors to the ALJ, most resting on failure to account for her difficulties in interacting with other people. Because I find that the ALJ committed no prejudicial error in weighing medical opinion, determining Ms. Dugan's credibility, or in formulating Ms. Dugan's residual functional capacity, I affirm the ALJ's decision.

## BACKGROUND

    Ms. Dugan protectively filed applications for disability insurance benefits and supplemental security income on September 2, 2009, alleging an onset date of November 1,

1 – OPINION AND ORDER

2008.  (AR [12-6] at 141, 143.)  Her application was denied initially and on reconsideration.  (AR [12-5] at 98, 103, 109, 113.)  A hearing was held before Administrative Law Judge ("ALJ") Anthony J. Johnson, Jr., on March 7, 2012.  (AR [12-3] at 19.)

At the hearing, Ms. Dugan testified that her medications for schizoaffective disorder have improved her ability to tolerate interpersonal interaction.  (AR [12-3] at 65.)  For example, when she shopped in the past, she would avoid everyone in the store until she arrived at the cash register.  *Id.* at 74.  She testified that her medication reduced the paranoid feelings that caused this behavior.  *Id.* at 75.  Even with medication, however, she said that she sometimes feels as though she can read other people's minds.  *Id.* at 65–66.  The people she associates with become uncomfortable when she announces this.  *Id.* at 66.

Ms. Dugan summarized her tumultuous work history at the hearing, recounting positions she held at various fast food restaurants, a gas station, a video rental store, and a nonprofit poverty relief organization.  *Id.* at 43–48, 71–76.  She testified that she left each of her past jobs because of disagreements or indiscretions with coworkers and supervisors.  *Id.*  She also recounted her difficulties in getting along with her relatives.  *Id.* at 68–71.  She resided with her sister from March of 2009 until she left after an unspecified dispute.  *Id.* at 68–69.  From then until the present she lived with her mother, excluding a few months spent at a homeless shelter after another argument. *Id.* at 69–71.

The ALJ decided that Ms. Dugan is not disabled.  *Id.* at 30.  The ALJ found that Ms. Dugan suffers severe impairments including "schizoaffective disorder, patella-femoral syndrome, depression, degenerative disc disease . . . , obesity, asthma, obsessive compulsive disorder (OCD), insomnia, and anxiety."  *Id.* at 22.  Accordingly, the ALJ incorporated a number of physical and mental limitations into Ms. Dugan's residual functional capacity ("RFC"),

including admonitions that she "should interact with the public no more than occasionally" and "have no more than occasional interaction with coworkers and supervisors." *Id.* at 24. In reaching this conclusion, the ALJ afforded "great weight" to the opinions of evaluating physician Gale Smolen, M.D., and state agency psychological consultant Robert Henry, Ph.D.[1] *Id.* at 27–28. Based on the testimony of a vocational expert, the ALJ concluded that Ms. Dugan's RFC permitted her to work as a small products assembler, a wire worker, and a jewelry preparer, all positions that exist in significant numbers in the national economy. *Id.* at 29. When the Appeals Council denied Ms. Dugan's request for review, the ALJ's decision became the final decision of the Commissioner. *Id.* at 1.

Ms. Dugan filed a complaint [1] seeking review of the Commissioner's decision on May 15, 2012. She filed an opening brief [13] on January 23, 2014. The Commissioner responded [15]. Ms. Dugan did not file a reply.

## STANDARD OF REVIEW

An ALJ's denial of benefits must stand unless it "was not supported by substantial evidence in the record as a whole" or "the ALJ applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation omitted).

## DISCUSSION

In all, Ms. Dugan identifies four errors in the ALJ's decision. She contends that the ALJ (1) failed to fully account for Dr. Smolen's opinion regarding her social difficulties; (2) gave improper reasons for discounting her credibility; (3) incorporated limitations into the RFC

---

[1] The ALJ does not include Dr. Henry's name in his decision, but cites two reports prepared by Dr. Henry. (AR [12-3] at 28 (citing AR [12-8] 306–09, 313–26).)

without grounding them in medical evidence; and (4) failed to account for all of her severe impairments in the RFC.

I.      **Dr. Smolen's Opinion**

An ALJ may reject a treating physician's uncontradicted opinion only for "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r*, 528 F.3d 1994, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Where a treating physician's opinion contradicts that of another doctor, the ALJ may reject it based upon "specific and legitimate reasons," which also must rest on substantial evidence. *Id.* (quoting *Bayliss*, 427 F.3d at 1216). The ALJ must explain his decision to discount a treating physician's opinion with "a thorough summary of the facts and conflicting clinical evidence." *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433–34 (9th Cir. 1988).

Dr. Smolen performed a psychiatric evaluation for Oregon's Disability Determination Services. (AR [12-8] at 298–302.) During their time together, Ms. Dugan told Dr. Smolen that she has experienced visual and auditory hallucinations since childhood. *Id.* at 299. Ms. Dugan also reported feeling depressed "about a quarter of the month" and suffering infrequent panic attacks. *Id.* at 300. Based on her observations and Ms. Dugan's subjective reports, Dr. Smolen diagnosed Ms. Dugan with schizoaffective disorder and attendant depression. *Id.* at 301. She also concluded that Ms. Dugan likely cannot "get along well with other people on a mental basis." *Id.*

Dr. Henry reviewed Ms. Dugan's mental symptoms against the Commissioner's mental impairment categories. *Id.* at 313. He noted that Ms. Dugan did not report her auditory and visual hallucinations to a medical provider until January of 2010, despite having told Dr. Smolen that she experienced them since childhood. *Id.* at 325. He observed also that Ms. Dugan's

primary care provider at the time, Nathan Mason, M.D., remarked that her mental health symptoms improved with medication. *Id.* Dr. Henry also relied on Dr. Smolen's observations and conclusions. *Id.* He determined that Ms. Dugan's social limitations are "moderate" rather than "marked." *Id.* Accordingly, he suggested that the RFC should limit Ms. Dugan to only occasional contact with the general public. *Id.*

Ms. Dugan argues that the ALJ failed to account fully for Dr. Smolen's opinion despite giving it great weight in her analysis. (Pl.'s Br. [13] at 9.) According to Ms. Dugan, Dr. Smolen opined that she is "not capable of getting along with others entirely." *Id.* She asserts that the ALJ ignored this diagnosis of total social dysfunction, instead choosing to allow her occasional contact with the public and coworkers. *Id.*

This argument exaggerates Dr. Smolen's assessment of Ms. Dugan's difficulties. Dr. Smolen determined only that Ms. Dugan would struggle to "get along well" with others, not that she is completely dysfunctional in her social interactions. (AR [12-8] at 301.) The ALJ reasonably concluded from Dr. Smolen's opinion that Ms. Dugan is capable of occasional interaction with the public.

Ms. Dugan goes on to contend that the ALJ could not reasonably have afforded great weight to both Dr. Smolen's opinion that Ms. Dugan is "unable to get along with others entirely" and Dr. Henry's opinion that Ms. Dugan suffers only moderate social impairment. (Pl.'s Brief [13] at 9–10.) This argument rests entirely on Ms. Dugan's misapprehension of Dr. Smolen's opinion. Both medical experts opined only that Ms. Dugan is limited in her social interaction, not totally disabled. The ALJ reasonably relied on both opinions.

Next, Ms. Dugan argues that Dr. Henry did not base his finding of only moderate social impairment on medical evidence. *Id.* at 10. Dr. Henry's own opinion belies this contention. As

noted above, Dr. Henry reviewed treatment notes prepared by Ms. Dugan's primary physician, Dr. Mason. (AR [12-8] at 325.) He noted that Ms. Dugan's symptoms improved after Dr. Mason prescribed medication her anxiety. *Id.* Dr. Henry also relied on Dr. Smolen's in-person observations of Ms. Dugan. *Id.*

Finally, Ms. Dugan asserts that the ALJ attributed to Dr. Henry a statement that Dr. Henry did not make. (Pl.'s Br. [13] at 10.) According to the ALJ, "[t]he state agency psychological consultant noted the claimant demonstrates adequate ability to interact with treating and examining sources." (AR [12-3] at 27.) Ms. Dugan argues that Dr. Henry did not comment on the quality of her interactions with physicians. (Pl.'s Br. [13] at 10.)

The Commissioner concedes that the ALJ's misattribution was error. (Def.'s Br. [15] at 11–12.) Nonetheless, the error did not prejudice Ms. Dugan.

An error is harmless if "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (internal quotation omitted). Dr. Henry grounded his opinion of Ms. Dugan's interpersonal difficulties in two different medical sources. That he never commented favorably on Ms. Dugan's interaction with medical providers does not detract from his conclusion that she is capable of occasional contact with the public.

The ALJ committed no prejudicial error in weighing Dr. Smolen's and Dr. Henry's opinions.

## II.  Ms. Dugan's Credibility

A Social Security claimant who alleges that subjective symptoms have made her disabled must satisfy two requirements: "(1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of

impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996) (emphasis in original). Where the claimant produces objective evidence of a medically determinable impairment that could reasonably produce her symptoms, absent evidence of malingering, the ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting her description of the severity of those symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

In measuring the severity of the claimant's symptoms, the ALJ may consider the claimant's daily activities and the responsiveness of her symptoms to medication. 20 C.F.R. §§ 404.1529(c)(3)(i), (iv), 416.929(c)(3)(i), (iv). The ALJ may also consider the claimant's failure to pursue treatment in weighing the credibility of her objective reports. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The consistency of the claimant's reports, "both internally and with other information in the case record," is an important factor in the credibility determination. SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

Ms. Dugan argues that the ALJ failed to give clear and convincing reasons for discounting the credibility of her subjective reports. (Pl.'s Br. [13] at 11–12.) In particular, she asserts that "[t]he ALJ provided no specific reasons to reject [her] testimony regarding her interpersonal deficits." *Id.* at 12. She does not elaborate.

In fact, the ALJ gave many reasons to doubt Ms. Dugan's account of her social difficulties. First, the ALJ observed that Ms. Dugan's daily activities, including socializing "with her family and with people at the store," meeting friends, and "attending bible study," are inconsistent with crippling social dysfunction. (AR [12-3] at 25, 27.) Second, the ALJ noted that Ms. Dugan's mental health symptoms respond positively to medication, without any need for hospitalization. *Id.* at 26–27. Finally, the ALJ noted inconsistencies between Ms. Dugan's

7 – OPINION AND ORDER

testimony and her report to the Commissioner. *Id.* at 25. As an example, she told the ALJ that her most recent job lasted until November 4, 2008, when she quit after a dispute over her sandwich-wrapping technique. *Id.* In her report, however, she recalled being fired on November 1, 2008. *Id.* Together, these observations amount to clear and convincing reasons to suppose that Ms. Dugan's mental impairments do not frustrate all meaningful social interaction.

### III.   RFC's Basis in the Medical Record

An ALJ must support his RFC determination with a narrative that explains how evidence in the record, both medical and nonmedical, supports his findings. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Medical opinions in the record must be addressed, and the ALJ must always give reasons for declining to adopt them. *Id.* A medical opinion from an examining physician concerning "the nature and severity" of a claimant's impairments that is consistent with the rest of the record and supported by reliable diagnostic techniques is entitled to controlling weight. *Id.* In the end, the RFC must be based on all the evidence in the record, medical and nonmedical. 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3).

Ms. Dugan argues that the ALJ here "impermissibly drew upon his own inferences from medical reports" rather than relying on medical opinion. (Pl.'s Br. [13] at 7–8.) "[W]ithout medical opinion or guidance," she asserts, the ALJ concluded that Ms. Dugan can carry out written or diagrammatic instructions, solve simple, standardized problems involving only a few concrete variables, work around coworkers, and work with only "occasional interaction with coworkers and supervisors." *Id.* at 8 (quoting without attribution AR [12-3] at 24). Ms. Dugan argues that these conclusions rest on "[n]o medical basis." *Id.* at 7–8.

This argument is off the mark, as the ALJ in fact relied upon medical evidence and opinion in formulating Ms. Dugan's RFC. The ALJ read Dr. Smolen to opine that Ms. Dugan

8 – OPINION AND ORDER

suffers "no more than mild impairment in her ability to remember, understand, and concentrate." (AR [12-3] at 27.)  The ALJ also relied on the opinion of Dr. Henry, who concluded that Ms. Dugan can perform "simple and routine types of tasks independently" and should have only occasional contact with the general public.  (AR [12-3] at 27–28; [12-8] at 308.)  Ms. Dugan has not shown that the ALJ erred.

## IV. Severe Impairments Not Accounted for in the RFC

Where a claimant asserts that the RFC failed to account for an impairment, she bears the burden of showing that the impairment causes physical limitations that the RFC does not accommodate.  *See Valentine v. Comm'r*, 574 F.3d 685, 692 n.2 (9th Cir. 2009) (rejecting claimant's assertion that the RFC did not account for his knee and shoulder injuries where he did not show what physical limitations the injuries caused).  A bare assertion that the RFC does not account for an impairment "in some unspecified way" does not suffice.  *Id.*

Ms. Dugan argues that the RFC that the ALJ formulated does not account for her asthma, insomnia, OCD, or anxiety, all found to be severe impairments.  (Pl.'s Br. [13] at 8.)  She does not attempt to explain what limitations flowing from these impairments are missing in the RFC. For this reason, she has not shown any failure to account for them was error.

## CONCLUSION

Ms. Dugan has not shown that the ALJ committed any prejudicial error in denying her applications for benefits.  The final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this ___26th___ day of June, 2014.

/s/ Michael W. Mosman  
MICHAEL W. MOSMAN  
United States District Judge